**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION**

| | | |
|---|---|---|
| AMY BATTAGLIA, as Personal Representative of the Estate of STEPHEN BATTAGLIA, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT** |
| vs. | ) ) | *(Jury Trial Demanded)* |
| HARBOR FREIGHT TOOLS USA, INC., | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff **AMY BATTAGLIA, as Personal Representative of the Estate of STEPHEN BATTAGLIA** (hereafter referred to as "Plaintiff"), by and through their undersigned counsel **JOHNSON BECKER, PLLC** and **MOTLEY RICE, LLC**, files this Complaint to assert wrongful death, survival, and other actions arising from the negligence and strict products liability of the above-captioned Defendant **HARBOR FREIGHT TOOLS USA, INC.** (hereafter referred to as "Defendant Harbor Freight"), and in support thereof, Plaintiff aver as follows:

**NATURE OF THE CASE**

1. Defendant Harbor Freight operates roughly 1000 stores in at least 48 states, including South Carolina, that sell tools, including the "Pittsburgh Automotive" 3-ton jack stands, item number 61196 (hereafter referred to as the "subject jack stand(s)") at issue in this case.

2. On or about April 20, 2018, the subject jack stands collapsed while the deceased, Stephen Battaglia, was working on his vehicle in his backyard. As a result, the vehicle fell on Stephen Battaglia's chest, killing him. He was 22 years old.

3.  On or about May 3, 2020, Harbor Freight recalled[1] more than 1.2 million Pittsburgh Automotive 3 Ton Heavy Duty Steel Jack Stands manufactured between December 1, 2012 and December 1, 2019, which includes the subject jack stands, because of a defect involving the "product quality" that "was inconsistent due to aging of the tooling and inconsistent location indexing of the pawl armature hole."[2]  The recall was issued in cooperation with the National Highway Traffic Safety Administration (NHTSA).

4.  Defendant Harbor Freight manufactured these jack stands, including the subject jack stands, with a defect that made them inherently dangerous.

5.  As a result, Plaintiff Amy Battaglia, on behalf of her deceased son Stephen Battaglia, brings this case for actions of wrongful death pursuant to S.C. Code Ann.§ 15-5-10 *et seq* and survival pursuant to S.C. Code Ann.§ 15-5-90 *et seq* as a direct and proximate result of the negligence and strict products liability of Defendant Harbor Freight.

## THE PARTIES

6.  Plaintiff Amy Battaglia is a resident and citizen of the Town of Calhoun Falls, County of Abbeville, State of South Carolina, and is the Personal Representatives of the Estate of her late son, Stephen Battaglia ("Stephen"). Her appointment can be found in the Probate Court for the County of Abbeville, State of South Carolina under Estate No. 2021-ES-01-101.

7.  Defendant Harbor Freight is a corporation existing under the laws of Delaware with its principal place of business located at 26565 Agoura Road in Calabasas, California 91302. Defendant Harbor Freight is a corporate citizen of Delaware and California. Defendant Harbor Freight is registered to do business in this state with the South Carolina Secretary of State's Office,

---

[1] *See* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E027-9959.PDF (last accessed March 24, 2021). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[2] *Id*.

and its registered agent for service of process is Corporate Creations Network Inc., 6650 Rivers Avenue, North Charleston, South Carolina 29406.

## JURISDICTION AND VENUE

8. Defendant Harbor Freight advertises and sells goods in the State of South Carolina, and has advertised and sold the type of Pittsburgh Automotive stands at issue in in this matter in the State of South Carolina.

9. Defendant Harbor Freight transacted and conducted business within the State of South Carolina that relates to the allegations in this Complaint.

10. Defendant Harbor Freight derived substantial revenue from goods and products used in the State of South Carolina, including Pittsburgh Automotive stands.

11. Defendant Harbor Freight expected or should have expected its acts to have consequences within the State of South Carolina, and derived substantial revenue from interstate commerce related to Pittsburgh Automotive stands.

12. Defendant Harbor Freight regularly and persistently engaged in the business of marketing, distributing, and/or selling Pittsburgh Automotive stands for use by consumers, including those within the State of South Carolina.

13. Defendant Harbor Freight is authorized to do business in the State of South Carolina and derives substantial income from doing business in this state.

14. Defendant Harbor Freight purposefully availed itself of the privilege of conducting activities within the State of South Carolina, thus invoking the benefits and protections of its laws.

15. At all times relevant herein, Defendant Harbor Freight conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by knowingly marketing, distributing, selling and shipping products, including Pittsburgh

Automotive stands, into South Carolina for sale to consumers in this state. Further, this action arises from Defendant Harbor Freight's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, relates to Defendant Harbor Freight's regular and persistent manufacture, supply and sale of Pittsburgh Automotive stands, and resulted in injuries in South Carolina. Therefore, as to Defendant Harbor Freight, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

16.     Jurisdiction over Defendant Harbor Freight is also proper under the due process provisions of the South Carolina and United States constitutions. *See e.g. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

17.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

18.     Venue of this action properly lies in the District of South Carolina, pursuant to 28 U.S.C. § 1391(a), and within the Greenwood Division, pursuant to Local Civil Rule 3.01 (D.S.C.), as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred, in which Defendant Harbor Freight does business relating to the allegations contained herein, and wherein Plaintiff resides.

## OPERATIVE FACTS

### A. The Multiple "Pittsburgh Automotive" Jack Stand Recalls

19.     Defendant Harbor Freight operates roughly 1000 stores in at least 48 states that sell tools, including jack stands labeled "Pittsburgh Automotive" that come in at least 2 varieties of 3-

ton jack stands, item numbers 61196 and 56371, and one variety of six-ton jack stands, item number 61197.

20. On or about May 3, 2020, Defendant Harbor Freight recalled[3] more than 1.2 million Pittsburgh Automotive 3 Ton Heavy Duty Steel Jack Stands manufactured between December 1, 2012 and December 1, 2019, which includes the subject jack stands. The recall was issued in cooperation with the NHTSA.

21. According to the recall notice[4], the jack stands were recalled because of a defect causing the potential for, while under load and with a shift in weight, the pawl of the jack stands to disengage from the extension lifting post, allowing the stand to drop suddenly, with the potential to injure or crush a person under the lifted car or truck, just as it did in this case.

22. More specifically, for certain jack stand units, the ratchet teeth on the jack stand lifting extension post may inconsistently engage the pawl to a sufficient depth.

23. On or about May 20, 2020, Defendant Harbor Freight issued a second recall[5] involving approximately 454,000 units of the Pittsburgh Automotive 6 Ton Heavy Duty Steel Jack Stands, item number 61197, manufactured between June 13, 2013 and November 22, 2019.

24. Again, these jack stands were recalled due to the "product quality" which was "inconsistent due to aging of the tooling."[6]

---

[3] *Id.*
[4] *Id.*
[5] *See* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E016-6561.PDF (last accessed March 24, 2021).
[6] *Id.*

5

25. On or about July 7, 2020, Defendant Harbor Freight issued a third recall[7]; this time involving a "welding defect" of the *replacements* for the previously recalled Pittsburgh Automotive 3 Ton Heavy Duty Jack Stands.

26. In response to the recall, Defendant Harbor Freight's CEO Eric Schmidt, issued, in relevant part, the following statement:

> "I'm disappointed and embarrassed because we've identified a welding defect in a small number of the Pittsburgh 3 ton steel jack stands (SKU 56373) that replaced the recalled jack stands. We're now adding these jack stands to our recall. Unfortunately, this defect wasn't discovered during the initial recall investigation."[8]

27. On June 6, 2020, a class action lawsuit was filed against Defendant Harbor Freight concerning the defective "Pittsburgh Automotive" jack stands that have been recalled. The class action was filed in the Central District of California, and is titled *Mel Comes v. Harbor Freight Tools USA, Inc.* (Case No. 2:20-cv-05451-DMG-KK).

28. Since that time, multiple additional class action lawsuits have been filed around the country alleging defects in Defendant Harbor Freight's jack stands similar or identical to those referenced herein.

**B. The Subject Jack Stand and Incident on April 20, 2018**

29. On or about August 27, 2017, Stephen Battaglia purchased the subject jack stands directly from Defendant Harbor Freight via its website, www.HarborFreight.com.

30. On or about April 20, 2018, the deceased, Stephen Battaglia, was working on his vehicle in his backyard located at 55 Fairview Street, Calhoun Falls, South Carolina 29628. He used the subject jack stands to hoist his vehicle.

---

[7] *See* https://www.usatoday.com/story/money/2020/07/07/harbor-freight-jack-stands-recall/5393897002/ (last accessed March 24, 2021).
[8] *See* https://milled.com/harbor-freight/important-safety-message-about-jack-stands-mZ0SghMWdwMGZO4J (last accessed March 24, 2021).

31. After some time, Stephen's parents, Amy and Paul Battaglia found Stephen under the vehicle, with the subject jack stand collapsed nearby.

32. According to the Coroner, the vehicle fell on Stephen Battaglia's chest, killing him. He was 22 years old.

33. These jack stands, including the subject jack stand, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole.

34. The failure of the jack stands results from a defect created during the manufacturing process. This created a latent defect that was not readily apparent to the consumer, including Stephen Battaglia, at the time of purchase.

35. Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Stephen Battaglia, which ultimately resulted in his untimely death.

## FIRST CAUSE OF ACTION
## WRONGFUL DEATH & SURVIVAL:
## STRICT LIABILITY – MANUFACTURING DEFECT

36. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein

37. At all relevant times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

38. Pursuant to S.C. Code § 15-73-10 et seq., Defendant Harbor Freight is strictly liable in tort, irrespective of privity, for manufacturing, assembling and placing a defective and unreasonably dangerous product into the stream of commerce, which was a proximate cause of Plaintiff's Decedent's injuries and death

39. Defendant Harbor Freight had an active role in the manufacture, assembly, distribution and sale of the Pittsburgh Automotive stands, including the one at issue.

40. The Pittsburgh Automotive stands were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendant Harbor Freight.

41. At all relevant times, including when the incident alleged herein occurred, the Pittsburgh Automotive stand was used in an intended and/or foreseeable manner.

42. Plaintiff's decedent neither misused nor materially altered the Pittsburgh Automotive stand, and at the time of the incident complained of herein, the Pittsburgh Automotive stand was in the same or substantially similar condition that they were in at the time of sale.

43. As manufactured and sold, the Pittsburgh Automotive stand at issue failed to perform in a manner reasonably expected in light of its intended design, nature and function; indeed it performed in a manner fundamentally inconsistent with the expectations of a reasonable consumer.

44. These Harbor Freight jack stands, including the subject jack stands, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property; just as the subject jack stands did in this case. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole.

45. Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Stephen Battaglia, which ultimately resulted in his untimely death.

46. As manufactured and sold by Defendant Harbor Freight, the Pittsburgh Automotive stand was in a defective condition and unreasonably dangerous to user and consumers, such as Plaintiff's decedent.

47. The defective, unreasonably dangerous Pittsburgh Automotive stand, as manufactured, failed in its essential purpose --- to uphold the weight of Plaintiff's decedent's vehicle while hoisted so that could perform maintenance of the vehicle --- and was a direct and proximate cause of the collapse of vehicle onto Plaintiff's decedent.

48. The collapse of Pittsburgh Automotive stand directly and proximately caused Stephen to:

   a. suffer excruciating personal injuries;

   b. endure physical pain and suffering;

   c. suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

   d. Loss of income;

   e. funeral expenses; and

   f. suffer other such injuries, damages, and particulars as the evidence may show.

49. By reason of the foregoing, and under S.C. Code Ann. § 15-5-90 *et seq*., Plaintiff, on behalf of the Estate of Stephen Battaglia, is entitled to recover for all general and special damages to Stephen proximately caused by Defendant Harbor Freight and the defective condition

9

of its product manufactured, distributed, marketed, placed into the stream of commerce and/or sold.

50. Moreover, wrongful death is a specifically recognized cause of action under South Carolina law, and this cause of action is brought in accordance with S.C. Code Ann.§ 15-5-10 *et seq* on behalf of the surviving heirs of Stephen Battaglia, deceased, by his personal representative, Amy Battaglia.

51. The Plaintiff, as personal representative of the estate of Stephen Battaglia, deceased, is authorized to and bring this action on behalf of the survivors and statutory beneficiaries of Stephen Battaglia under and by virtue of S.C. Code Ann.§ 15-5-10 *et seq*.

52. As a direct and proximate result of Plaintiff's Decedent's death, which a direct and proximate result of the manufacture and sale of the defective, unreasonably dangerous Pittsburgh Automotive stand Plaintiff's Decedent's beneficiaries have suffered damages, present and prospective, which are naturally the proximate consequence of the Defendant Harbor Freight's wrongful acts and omissions, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, funeral expenses, and such other damages as the Court or jury deems just and proper for Plaintiff's Decedent's wrongful death under S.C. Code Ann. § 15-51-10 *et seq*.

53. As a direct and proximate result of the death of Stephen Battaglia, his survivors have been deprived of the earnings, services, maintenance, guidance, tutelage, advice, counsel, support, comfort, assistance and society that they would have received from Stephen Battaglia for the remainder of his natural life had his life not been tragically and prematurely lost.

54. As a direct and proximate result of the acts/omissions of Defendant Harbor Freight as set forth above, decedent, Stephen Battaglia, suffered injuries, including excruciating pain and

10

suffering, mental anguish, terror, and knowledge of bodily injury and impending death. Stephen Battaglia has lost his life as set forth herein.

55. By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## SECOND CAUSE OF ACTION
## WRONGFUL DEATH & SURVIVAL: NEGLIGENT MANUFACTURING DEFECT

56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

57. At all times material hereto, Defendant Harbor Freight owed Plaintiff's Decedent a duty of reasonable care in the assembly, manufacture, packaging, distribution, sale and/or placement into the stream of commerce of the Pittsburgh Automotive stand.

58. At all times material hereto, Defendant Harbor Freight owed Plaintiff a duty of reasonable care in the assembly, manufacture, packaging, distribution, sale and/or placement into the stream of commerce of the Pittsburgh Automotive stand.

59. Defendant Harbor Freight developed, tested, assembled, manufactured, packaged, distributed, marketed, sold, retailed and/or otherwise placed into the stream of commerce Pittsburgh Automotive stand, which was purchased by Plaintiff's Decedent, in defective condition unreasonably dangerous to foreseeable users.

60. The Pittsburgh Automotive stand was neither merchantable, nor reasonably suited for its intended, anticipated and/or foreseeable uses, when it was developed, tested, assembled,

manufactured, packaged, distributed, marketed, sold, retailed and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

61.     The Pittsburgh Automotive stand was defective and unreasonably dangerous at the time it left the possession and control of Defendant Harbor Freight and it was expected to, and did, reach Plaintiff's Decedent in substantially the same condition as it was in at the time it was developed, tested, assembled, manufactured, packaged, distributed, marketed, sold, retailed and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

62.     At all relevant times, including when the Incident alleged herein occurred, the Pittsburgh Automotive stand was used in a reasonable, intended, anticipated and/or foreseeable manner.

63.     Plaintiff's Decedent neither misused, nor materially altered the Pittsburgh Automotive stand, at any time.

64.     At all times material hereto, Plaintiff's Decedent exercised due care and was properly handling Pittsburgh Automotive stand in a reasonable, intended, anticipated and/or foreseeable in the manner.

65.     At all times material hereto, the actions and omissions Defendant Harbor Freight were negligent, grossly negligent, willful, wanton, reckless and/or careless, and Defendant Harbor breached duties owed to Plaintiff's Decedent and to Plaintiff by, *inter alia*:

   a. Assembling, manufacturing and distributing the Harbor Freight jack stands, including the subject jack stands, in a defective, unreasonably dangerous condition due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to

    property; just as the subject jack stands did in this case. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole;

  b. Assembling, manufacturing and distributing the jack stands, including the subject jack stands, in a condition wherein they did not conform their intended design or specifications;

  c. Assembling, manufacturing and distributing the jack stands, including the subject jack stands, in a condition wherein they were not suitable for their intended purposes or able to support the loads anticipated during the hoisting of vehicles; and

  d. In such other particulars are the evidence may show.

66.   Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Stephen Battaglia, which ultimately resulted in his untimely death.

67.   The defective, unreasonably dangerous Pittsburgh Automotive stand, as manufactured, failed in its essential purpose --- to uphold the weight of Plaintiff's decedent's vehicle while hoisted so that could perform maintenance of the vehicle --- and was a direct and proximate cause of the collapse of vehicle onto Plaintiff's decedent.

68.   The collapse of Pittsburgh Automotive stand directly and proximately caused Stephen to:

  a. suffer excruciating personal injuries;

  b. endure physical pain and suffering;

  c. suffer emotional distress, mental anguish, terror, knowledge of bodily injury and

        impending death;

    d. Loss of income;

    e. funeral expenses; and

    f. suffer other such injuries, damages, and particulars as the evidence may show.

69. By reason of the foregoing, and under S.C. Code Ann. § 15-5-90 *et seq.*, Plaintiff, on behalf of the Estate of Stephen Battaglia, is entitled to recover for all general and special damages to Stephen proximately caused by Defendant Harbor Freight and the defective condition of its product manufactured, distributed, marketed, placed into the stream of commerce and/or sold.

70. Moreover, wrongful death is a specifically recognized cause of action under South Carolina law, and this cause of action is brought in accordance with S.C. Code Ann.§ 15-5-10 *et seq* on behalf of the surviving heirs of Stephen Battaglia, deceased, by his personal representative, Amy Battaglia.

71. The Plaintiff, as personal representative of the estate of Stephen Battaglia, deceased, is authorized to and bring this action on behalf of the survivors and statutory beneficiaries of Stephen Battaglia under and by virtue of S.C. Code Ann.§ 15-5-10 *et seq*.

72. As a direct and proximate result of Plaintiff's Decedent's death, which a direct and proximate result of the manufacture and sale of the defective, unreasonably dangerous Pittsburgh Automotive stand Plaintiff's Decedent's beneficiaries have suffered damages, present and prospective, which are naturally the proximate consequence of the Defendant Harbor Freight's wrongful acts and omissions, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, funeral expenses, and such other damages as

the Court or jury deems just and proper for Plaintiff's Decedent's wrongful death under S.C. Code Ann. § 15-51-10 *et seq*.

73. As a direct and proximate result of the death of Stephen Battaglia, his survivors have been deprived of the earnings, services, maintenance, guidance, tutelage, advice, counsel, support, comfort, assistance and society that they would have received from Stephen Battaglia for the remainder of his natural life had his life not been tragically and prematurely lost.

74. As a direct and proximate result of the acts/omissions of Defendant Harbor Freight as set forth above, decedent, Stephen Battaglia, suffered injuries, including excruciating pain and suffering, mental anguish, terror, and knowledge of bodily injury and impending death. Stephen Battaglia has lost his life as set forth herein.

75. By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## THIRD CAUSE OF ACTION
### WRONGFUL DEATH & SURVIVAL: NEGLIGENCE, GROSS NEGLIGENCE AND RECKLESSNESS

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

77. At all times, Defendant Harbor Freight had a duty to use reasonable care in selecting, marketing, and selling the items in its stores.

78. Defendant Harbor Freight breached this duty by allowing the defectively manufactured jack stands, including the subject jack stands, to be placed in its stores, and by marketing and selling the defectively manufactured jack stands.

79. Specifically, these jack stands, including the subject jack stands, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property; just as the subject jack stands did in this case. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole.

80. Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Stephen Battaglia, which ultimately resulted in his untimely death.

81. As a direct and proximate result of the negligent, grossly negligent, reckless, willful, wanton and careless acts and/or omissions of Defendant Harbor Freight as set forth above, decedent, Stephen Battaglia, suffered injuries, including excruciating pain and suffering, mental anguish, terror, and knowledge of bodily injury and impending death. Stephen Battaglia has lost his life as set forth herein.

82. The collapse of Pittsburgh Automotive stand directly and proximately caused Stephen to:

    a. suffer excruciating personal injuries;

    b. endure physical pain and suffering;

    c. suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

    d.  Loss of income;

    e.  funeral expenses; and

    f.  suffer other such injuries, damages, and particulars as the evidence may show.

83.    By reason of the foregoing, and under S.C. Code Ann. § 15-5-90 *et seq.*, Plaintiff, on behalf of the Estate of Stephen Battaglia, is entitled to recover for all general and special damages to Stephen proximately caused by Defendant Harbor Freight and the defective condition of its product manufactured, distributed, marketed, placed into the stream of commerce and/or sold.

84.    Moreover, wrongful death is a specifically recognized cause of action under South Carolina law, and this cause of action is brought in accordance with S.C. Code Ann.§ 15-5-10 *et seq* on behalf of the surviving heirs of Stephen Battaglia, deceased, by his personal representative, Amy Battaglia.

85.    The Plaintiff, as personal representative of the estate of Stephen Battaglia, deceased, is authorized to and bring this action on behalf of the survivors and statutory beneficiaries of Stephen Battaglia under and by virtue of S.C. Code Ann.§ 15-5-10 *et seq*.

86.    As a direct and proximate result of Plaintiff's Decedent's death, which a direct and proximate result of the manufacture and sale of the defective, unreasonably dangerous Pittsburgh Automotive stand Plaintiff's Decedent's beneficiaries have suffered damages, present and prospective, which are naturally the proximate consequence of the Defendant Harbor Freight's wrongful acts and omissions, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, funeral expenses, and such other damages as the Court or jury deems just and proper for Plaintiff's Decedent's wrongful death under S.C. Code Ann. § 15-51-10 *et seq*.

87. As a direct and proximate result of the death of Stephen Battaglia, his survivors have been deprived of the earnings, services, maintenance, guidance, tutelage, advice, counsel, support, comfort, assistance and society that they would have received from Stephen Battaglia for the remainder of his natural life had his life not been tragically and prematurely lost.

88. As a direct and proximate result of the acts/omissions of Defendant Harbor Freight as set forth above, decedent, Stephen Battaglia, suffered injuries, including excruciating pain and suffering, mental anguish, terror, and knowledge of bodily injury and impending death. Stephen Battaglia has lost his life as set forth herein.

89. By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## REQUEST FOR PUNITIVE DAMAGES

87. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

88. The actions and inactions of the Defendant was of such a character as to constitute a pattern or practice of willful, wanton, and reckless misconduct causing substantial harm and resulting in damages to Plaintiff and Plaintiff's Decedent.

89. More specifically, the Defendant acted with a conscious and flagrant disregard for the rights and safety of Plaintiff's Decedent, and/or deliberately engaged in willful, wanton, and reckless disregard for the life and safety of Plaintiff's Decedent.

90. By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, the Defendants are liable to Plaintiff for punitive and exemplary damages.

## PRAYER FOR RELIEF

91. **WHEREFORE**, Plaintiff prays as follows:

    a. For a trial by jury pursuant to Rule 38, Fed. R. Civ. P.

    b. Judgment against Defendant Harbor Freight;

    c. For such sums as actual and other compensatory damages in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

    d. For exemplary and punitive damages against Defendant Harbor Freight, in an amount as a jury may determine to halt such conduct;

    e. For the costs of this suit, including attorney's fees; and

    f. For such other and further relief to which they may be entitled, that this Honorable Court deems just and proper.

## JURY DEMAND

92. Plaintiff hereby demands a trial by jury.

Dated: April 12, 2021.

/s/ T. David Hoyle
T. David Hoyle, Esq. (D.S.C. Bar No. 9928)
W. Taylor Lacy, Esq. (D.S.C. Bar No .9929)
**MOTLEY RICE, LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Phone: (843) 216-9000
Dhoyle@motleyrice.com
Wlacy@motleyrice.com

*In association with:*

Michael K. Johnson, Esq. (#0258696)
*Pro Hac Vice to be filed*
Kenneth W. Pearson, Esq. (#016088X)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (#0397289)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Phone: (612) 436-1800
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

*Attorneys for Plaintiff*